15-2024-cr(L)
United States of America v. Murshed (Algahaim)

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2016

Heard:  September 29, 2016      Decided: December 1, 2016

Docket Nos. 15-2024(L), 15-2069(Con)

- - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,
        Appellee,

            v.

AHMED A. ALGAHAIM, MOFADDAL M. MURSHED,
        Defendants-Appellants.[1]
- - - - - - - - - - - - - - - - - - - - - - - -

Before:  NEWMAN, WINTER, and CABRANES, Circuit Judges.

Appeal from the June 12, 2015, judgments of the District Court for the Northern District of New York (Thomas J. McAvoy, District Judge), convicting Mofaddal M. Murshed and Ahmed A. Algahaim of offenses concerning benefits under the Supplemental Nutrition Assistance Program (formerly "food stamps") and sentencing them to prison terms of thirty and twenty-one months, respectively.

---

[1] The Clerk is requested to change the official caption as above.

Affirmed and remanded for consideration of non-Guidelines sentences.

Molly Corbett, Office of the Federal Public Defender, Syracuse, NY (Lisa A. Peebles, Federal Public Defender, Syracuse, NY, on the brief), for Appellant Ahmed A. Algahaim.

Jeremy Gutman, New York, NY, for Appellant Mofaddal M. Murshed.

Paul D. Silver, Asst. U.S. Atty., Albany, NY (Richard S. Hartunian, U.S. Atty., Jeffrey C. Coffman, Asst. U.S. Atty., Albany, NY, on the brief), for Appellee.

JON O. NEWMAN, <u>Circuit Judge</u>:

This is an appeal by two defendants found guilty after a jury trial of offenses concerning misuse of benefits under the Supplemental Nutrition Assistance Program ("SNAP") (formerly "food stamps"). Ahmed A. Algahaim and Mofaddal M. Murshed appeal from the June 12, 2015, judgments of the District Court for the Northern District of New York (Thomas J. McAvoy, District Judge). We affirm the convictions and sentences but also remand to permit the sentencing judge to consider non-Guidelines sentences in

view of the significant effect of the loss enhancement in relation to the low base offense level.

## Background

Defendants-Appellants Murshed and Algahaim worked at a small grocery store called D&D Grocery and Deli ("D&D") in Hudson, New York. Murshed represented himself to be the owner of D&D. D&D was approved by the United States Department of Agriculture to redeem SNAP benefits for food items. SNAP benefits are provided to eligible recipients through the use of an electronic benefit transfer ("EBT") card. It is unlawful to give cash in exchange for SNAP benefits.

Several bona fide customers of D&D and confidential informants posing as customers testified that they were given cash when they used their EBT cards to redeem SNAP benefits. Both Murshed and Algahaim gave cash in exchange for SNAP benefits to at least one customer and one confidential informant on several occasions.

A grand jury indicted Murshed and Algahaim on two counts each. Count One charged both defendants with conspiring to present or to cause to be presented, benefits of a value of more than $100, knowing such benefits to have

3

been received, transferred or used in violation of the provisions of the SNAP, in violation of 18 U.S.C. § 371 and 7 U.S.C. § 2024(c). Count Two charged Murshed with using, transferring, acquiring, or possessing SNAP benefits in a manner contrary to the Food Stamp Act and regulations issued pursuant to that act, in violation of 7 U.S.C. § 2024(b). Count Four charged Algahaim with a violation of the same statute. After a five-day jury trial, both were convicted on all counts.

Discussion

## I. Jury Charge on *Mens Rea*

The appellants contend that the District Court's response to inquiries from the jury undermined the Court's initial instruction on the requisite *mens rea*. In its initial charge, the Court instructed that the burden was on the Government to prove beyond a reasonable doubt that the defendants acted intentionally and deliberately with knowledge "that receiving, transferring, using or possessing SNAP access devices, in exchange for cash, was a violation of the law or Department of Agriculture regulations." The Court explained "intentionally,"

4

"deliberately," and "knowingly" in standard language. The initial charge properly explained the requisite *mens rea*.

The jury asked for clarification in two notes. The first asked for a definition of "voluntary," a word included in the initial charge. Counsel did not suggest any particular language for the Court's use in a response. The Court told the jurors that they should reread the state of mind instruction and that the meaning of "voluntary" would become apparent. Counsel for Murshed said he objected only to the Court's saying that the meaning of "voluntary" would become apparent. Counsel for Algahaim made no objection.

The jury's second inquiry asked whether all statements in the instructions carried equal weight and whether there was a difference between two sentences of the charge explaining the requisite mental state. Again, counsel offered no suggestions for a response. The Court's reply included a reminder that the charge was to be considered as a whole, that there was no significant difference between the two sentences to which the jury referred, and that "voluntary," the word queried in the jury's first note, meant that an action was taken of a person's own free will and was the opposite of being made to do something.

Although the Court stated that it was providing all parties an exception to the supplemental charge, it is not clear what, if anything, counsel wanted the Court to tell the jury.

We see no basis for any complaint concerning the responses to either note. Neither response in any way undermined the initial, entirely proper explanation of the requisite *mens rea*.

## II. Evidence of *Mens Rea*

Murshed contends that the evidence was insufficient to establish that he acted with the requisite *mens rea.* However, the evidence of the several instances when he swiped an EBT card, did not provide food, and instead provided cash gave the jury an ample basis for inferring the requisite *mens rea*.

## III. Sentencing Issues

*Guidelines calculations.* Calculation of Murshed's Guidelines sentencing range began with a base level of six for an offense involving fraud that has a statutory maximum sentence of less than twenty years. See U.S.S.G. § 2B1.1(a)(2). Then from the loss table, twelve levels were added because of the amount of loss, see *id*. §

2B1.1(b)(1)(G), bringing the adjusted offense level to eighteen, three times the base offense level. In criminal history category I, the adjusted offense level yielded a sentencing range of twenty-seven to thirty-three months. The District Court imposed a sentence of thirty months.

Algahaim's Guidelines calculation also began with a base offense level of six, which was increased by ten levels for the amount of loss for which he was responsible, see *id.* § 2B1.1(b)(1)(F), bringing the adjusted offense level to sixteen. In criminal history category I, the adjusted offense level yielded a sentencing range of twenty-one to twenty-seven months. The District Court imposed a sentence of twenty-one months.

*Mitigating role claim.* Algahaim contends that the District Court erred by denying him a mitigating role adjustment. The Guidelines authorize a sentencing judge to reduce an adjusted offense level by two levels if the defendant was a "minor participant," by four levels if the defendant was a "minimal participant," and by three levels in cases falling between those two classifications. *See id.* § 3B1.2. To be entitled to a mitigating role adjustment a defendant must have "play[ed] a part in committing the

7

offense that makes him substantially less culpable than the average participant." *Id.* § 3B1.2 Application Note 3(A).

In the pending case, no facts concerning what Algahaim did are in dispute. The issue for the sentencing judge was solely whether those facts entitled Algahaim to a mitigating role adjustment. That is the sort of legal determination we review *de novo*. On such review, we agree with Judge McAvoy that no adjustment was warranted.

Although Algahaim's role in managing the store might have been less than that of Murshed, Algahaim's role in committing the charged offenses was virtually identical to Murshed's. Algahaim did not play a part in the offenses that made him substantially less culpable than the average participant.

*Presentence report claim.* Murshed contends that the District Court violated Rule 32(i)(1)(A) of the Federal Rules of Criminal Procedure, which requires a sentencing court to "verify that the defendant and the defendant's attorney have read and discussed the presentence report" ("PSR"). In the absence of objection in the District Court, we review this alleged error under the "plain error" standard. We have observed that "the plain-error exception

to the contemporaneous-objection rule is to be used sparingly, to correct only particularly egregious errors when a miscarriage of justice would otherwise result." *United States v. Salim*, 690 F.3d 115, 125 (2d Cir. 2012) (internal quotation marks omitted). At sentencing, Murshed's lawyer assured Judge McAvoy, "Yeah, we did go over it [the PSR]." Although Murshed somewhat equivocated as to what he knew about the PSR, his lawyer's statement entitled Judge McAvoy to conclude that Rule 32(i)(1)(A) had been satisfied. And the statement assures this Court that there had not been a plain error that affected Murshed's substantial rights or seriously affected the fairness of the proceedings. *See United States v. Marcus*, 560 U.S. 258, 262 (2010) (outlining plain error criteria).

*Effect of loss adjustment.* One aspect of the sentencing, however, warrants further consideration. The calculation of Murshed's adjusted offense level, driven by the monetary loss amount, increased his base offense level from six to eighteen, a three-fold increase. Similarly, the calculation of Algahaim's adjusted offense level, also driven by the loss amount, increased his base offense level from six to sixteen. We recognize that these increases

complied with the Guidelines Manual. We also recognize that the Commission had the authority to construct a set of guidelines that used loss amount as the predominant determination of the adjusted offense level for monetary offenses.

But the Commission could have approached monetary offenses quite differently. For example, it could have started the Guidelines calculation for fraud offenses by selecting a base level that realistically reflected the seriousness of a typical fraud offense and then permitted adjustments up or down to reflect especially large or small amounts of loss. Instead the Commission valued fraud (and theft and embezzlement) at level six, which translates in criminal history category I to a sentence as low as probation, and then let the amount of loss, finely calibrated into sixteen categories, become the principal determinant of the adjusted offense level and hence the corresponding sentencing range. This approach, unknown to other sentencing systems, was one the Commission was entitled to take, but its unusualness is a circumstance that a sentencing court is entitled to consider. *See Kimbrough v. United States*, 552 U.S. 85, 101 (2007)

10

(sentencing judge may make a non-Guidelines sentence if the judge disagrees with a Commission's policy determination); *United States v. Cavera*, 550 F.3d 180, 192 (2d Cir. 2008) (in banc) (same). Where the Commission has assigned a rather low base offense level to a crime and then increased it significantly by a loss enhancement, that combination of circumstances entitles a sentencing judge to consider a non-Guidelines sentence. *Cf. United States v. Lauersen*, 348 F.3d 329, 344 (2d Cir. 2003) (cumulative effect of overlapping enhancements warranted consideration of departure), *reh'g denied*, 362 F.3d 160 (2d Cir. 2004); *United States v. Gigante*, 94 F.3d 53, 56 (2d Cir. 1996) (same).

We do not rule that the sentences were imposed in error. We conclude only that a remand is appropriate to permit the sentencing judge to consider whether the significant effect of the loss enhancement, in relation to the low base offense level, should result in a non-Guidelines sentence.

## Conclusion

Accordingly, we affirm the convictions and sentences, but remand for further consideration as outlined in this opinion.