17-2552-cr (con)
*United States v. Hirst*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14th day of December, two thousand eighteen.

PRESENT:    ROBERT D. SACK,
            BARRINGTON D. PARKER,
            DENNY CHIN,
                    *Circuit Judges.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,
                    *Appellee,*

            v.                                          17-2552-cr

JASON GALANIS, GARY HIRST,
                    *Defendants-Appellants,*

JOHN GALANIS, JARED GALANIS, DEREK GALANIS, GAVIN HAMELS, YMER SHAHINI,
                    *Defendants.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR APPELLEE:                                    BRIAN R. BLAIS, Assistant United
                                                 States Attorney (Aimee Hector, Rebecca
                                                 Mermelstein, Won S. Shin, Assistant
                                                 United States Attorneys, *on the brief*), *for*
                                                 Geoffrey S. Berman, United States
                                                 Attorney for the Southern District of
                                                 New York, New York, New York.


FOR DEFENDANT-APPELLANT                          MICHAEL TREMONTE, Sher Tremonte
GARY HIRST:                                      LLP, New York, New York.

Appeal from the United States District Court for the Southern District of

New York (Castel, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED,**

**ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED.**

Defendant-appellant Gary Hirst appeals from a judgment of conviction,

entered August 3, 2017, after a two-and-one-half-week jury trial.[1]  Hirst was convicted

of conspiracy, securities fraud, and wire fraud arising out of his involvement with

Gerova Financial Group, Ltd. ("Gerova").  He was sentenced principally to 78 months'

imprisonment.  We assume the parties' familiarity with the underlying facts, procedural

history, and issues on appeal.

The Government presented evidence that in 2007, Jason Galanis and

others created a special purpose acquisition company, originally called Asia Special

---

[1]     This appeal was consolidated with the appeal of co-defendant Jason Galanis, No. 17-629-cr.
Because the two appeals raise different issues, we address them separately.

2

Situations Acquisition Corp. and later renamed Gerova, which was initially traded on the American Stock Exchange. Hirst served as the President and Chairman of Gerova.

The evidence at trial showed that Galanis, Hirst, and others created fraudulent documents to justify the issuance of millions of dollars of Gerova stock to Ymer Shahini, a citizen of Canada and Kosovo, for their own benefit and without the knowledge or approval of the SEC or the Gerova board. Hirst signed on behalf of Gerova a fraudulently backdated agreement entitling Shahini to Gerova shares in consideration of a consulting fee purportedly owed to Shahini, which itself was justified by a fraudulently backdated document. Hirst also signed the May 26, 2010, letter authorizing Gerova's transfer agent to transfer 5,333,333 unrestricted Gerova shares to Shahini, which were issued on May 27, 2010. On June 1, 2010, Hirst instructed Gerova's transfer agent to cancel 5,333,333 shares issued to Gerova's former CEO, retroactive to May 27, 2010, effectively concealing the issuance of the Shahini shares.

Thereafter, Hirst's co-conspirators monetized the Shahini shares by depositing them in U.S. brokerage accounts and either selling them or using the shares as collateral. Before Gerova was de-listed from the stock exchange, more than $19 million of proceeds were generated from the sale of the Shahini shares. Some $2.6 million of those proceeds were deposited into an account managed by Hirst and used to pay a debt owed to an investor in a hedge fund that Hirst managed.

3

Hirst argues on appeal that (1) the district court erred in certain evidentiary rulings, (2) the district court erred in calculating the loss attributable to Hirst under the sentencing Guidelines, and (3) the government committed prosecutorial misconduct in summation. For the reasons discussed below, Hirst's arguments fail.

## DISCUSSION

### 1.    Evidentiary Rulings

We review a district court's evidentiary rulings for abuse of discretion. *United States v. Vilar*, 729 F.3d 62, 82 (2d Cir. 2013). If, however, an objection was not made, we review only for plain error. *United States v. Johnson*, 529 F.3d 493, 501 (2d Cir. 2008). "[W]e will not order a new trial because of an erroneous evidentiary ruling if we conclude that the error was harmless." *United States v. Abreu*, 342 F.3d 183, 190 (2d Cir. 2003).

#### A.    Evidence of the Disposition of the Shahini Shares

The district court did not err in permitting the Government to introduce evidence concerning the disposition of the Shahini shares. Hirst argues that the issuance of the Shahini shares and the monetization of those shares were two separate conspiracies, and that Hirst was not involved in the latter. The argument lacks merit.

Hirst was charged with being involved in a single scheme to fraudulently issue and monetize shares of Gerova. Dkt. No. 225 ¶¶ 13-17. A "single conspiracy . . . may involve two or more spheres or phases of operation," and the Government was

4

entitled to introduce evidence of such a conspiracy. *See United States v. Geibel*, 369 F.3d 682, 689 (2d Cir. 2004) (citation omitted). Evidence of conduct that arises out of the "same transaction or series of transactions as the charged offense" or "is necessary to complete the story of the crime on trial" is admissible. *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (quoting *United States v. Gonzalez*, 110 F.3d 936, 942 (2d Cir. 1997)).

The monetization of the Shahini shares was part of the overall scheme and was reasonably foreseeable to Hirst. He was involved in the fraudulent issuance of the shares, and he did foresee or should have foreseen that the shares would be monetized and disposed of for value in the United States. *See United States v. Overton*, 470 F.2d 761, 766 (2d Cir. 1972) (noting that conspirators are responsible for acts taken by co-conspirators in furtherance of the conspiracy whether or not they knew of precise methods chosen). This was particularly so given that the evidence at trial established that Hirst (1) was President and Chairman of Gerova, (2) personally authorized the fraudulent issuance of 5,333,333 shares of Gerova to Shahini to be "delivered without restriction" on trading, (3) took steps to prevent officers of Gerova from discovering the issuance, and (4) received a financial benefit from the monetization of the shares in the amount of $2.6 million. *See United States v. Svoboda*, 347 F.3d 471, 483 (2d Cir. 2003) (noting that a defendant's financial sophistication is relevant to the reasonable foreseeability inquiry).

Thus, the district court did not abuse its discretion in permitting the Government to introduce evidence of the fraudulent disposition of the Shahini shares.

**B. Testimony of Laby**

The district court did not err in permitting Arthur Laby, a law professor, to testify as a "summary witness" about securities law. Hirst argues that Laby, who the government initially presented as a fact witness, provided impermissible expert opinions, including opinions about the legal standard of materiality, the requirements of Regulation S, and the meaning of certain fiduciary duties.

Although Laby testified as a lay witness or summary witness, he was not prohibited from offering an opinion. Lay witness testimony "in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of [Federal Rule of Evidence] 702." Fed. R. Evid. 701. Hirst's challenge to Laby's testimony is reviewed for plain error because he did not object on this basis at trial. *See United States v. Algahaim*, 842 F.3d 796, 799-800 (2d Cir. 2016).

Laby testified about background principles of securities law. To the extent that Laby opined about these matters, we have held that some degree of specific, industry-related knowledge will not disqualify lay opinion testimony. *See United States v. Yannotti*, 541 F.3d 112, 126 (2d Cir. 2008); *United States v. Garcia*, 413 F.3d 201, 215-16

6

(2d Cir. 2005). The district court did not commit plain error in permitting Laby's testimony.[2]

## 2.    Reasonableness of Sentence

The district court did not err in calculating the loss attributable to Hirst under the U.S. Sentencing Guidelines (the "Guidelines"). A district court commits procedural error where it, *inter alia*, "makes a mistake in its Guidelines calculation." *United States v. Cavera*, 550 F.3d 180, 190 (2d Cir. 2008) (en banc). We review a district court's interpretation of the Guidelines *de novo* and its findings of fact for clear error. *United States v. Rubenstein*, 403 F.3d 93, 99 (2d Cir. 2005). A district court's factual findings at sentencing need be supported only by a preponderance of the evidence. *United States v. Martinez*, 862 F.3d 223, 246 (2d Cir. 2017).

"[I]n the case of a jointly undertaken criminal activity," the amount of loss attributable to a defendant at sentencing includes "all acts and omissions of others that were . . . (i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). To hold a defendant accountable for jointly undertaken criminal activity, a district court must make two "particularized findings": (1) "that the acts were within the scope of the defendant's agreement" and (2)

---

[2]    Hirst also argues that other witnesses should not have been permitted to testify. The objections lack merit.

7

"that they were foreseeable to the defendant." *United States v. Studley*, 47 F.3d 569, 574 (2d Cir. 1995). In determining scope, the district court "may consider any explicit agreement or implicit agreement fairly inferred from the conduct of defendant and others." U.S.S.G. § 1B1.3 cmt. n.3(B).

Hirst argued at sentencing that his issuance of shares to Shahini and subsequent failure to disclose the issuance itself resulted in a loss of only $1.1 million, because the shares issued by Hirst could not be sold in the U.S. for a certain time period and thus were worth substantially less than they would have been if freely transferable in U.S. markets. The district court did not agree, finding that "the loss resulting from the offense of Mr. Hirst was expected by him to be in a range of between 25 but not more than 65 million and was in fact in that range." App. at 415. This finding was based on the "average price of the security during the period of the fraud and the average price during the period following disclosure, multiplied by the number of shares outstanding." App. at 411.

In concluding that the disposition of the Shahini shares in U.S. markets was within the scope of Hirst's jointly undertaken criminal activity for purposes of Guidelines § 3B1.3, the district court found that "[a]t the time [Hirst] signed the warrant agreement and facilitated the exercise and facilitated the transfer, he knew from the surrounding circumstances that the purpose, the whole reason that Galanis had

recruited him was so that [the Shahini shares] would be sold on the U.S. market." App. at 414.

As to the second prong of *Studley*, foreseeability, the district court found that "it was foreseeable that these shares would wind up sold to U.S.-based investors." App. at 389. The court also found that Hirst knew that the "object and consequences of his acts were that these shares would be sold on U.S. markets by his coconspirators." App. at 413.

The district court made particularized findings at sentencing sufficient to satisfy *Studley* and Guidelines § 3B1.3, including the following: (1) "Mr. Hirst failed to contemporaneously inform Gerova's CFO and board of directors about the stock transfer, including details such as the number and the value of the transferred shares," App. at 391, (2) "on October 6, 2010, Gerova's board was asked to ratify the issuance of shares to Shahini" but Hirst did not disclose that the Shares received by Shahini "gave him control over half the float," nor did he tell the board that he had backdated the Warrant Agreement, App. at 392-95, and (3) the $2.6 million Hirst received from the proceeds of the Shahini shares were used to pay a debt owed by Hirst to Albert Hallac, App. at 405-06 ("[The jury] understood that it was paying down a debt. . . . They understood that, and I understand that as well."). The district court also "adopt[ed] as [its] findings of fact the facts set forth in the presentence report as modified . . . on the record." App. at 409.

9

Thus, the district court did not abuse its discretion, let alone commit clear error, in determining that the loss attributable to Hirst under the Guidelines was between $25 and $65 million.

3.    **Prosecutorial Misconduct**

The Government did not commit prosecutorial misconduct by referring in summation to the value of the Shahini shares as being $72 million.  Hirst argues that use of the $72 million figure as shorthand was misconduct that caused "substantial prejudice by so infecting the trial with unfairness as to make the resulting conviction a denial of due process."  Appellant's Br. at 31 (quoting *United States v. Certified Envtl. Servs., Inc.*, 753 F.3d 72, 95 (2d Cir. 2014)).  In considering claims of prosecutorial misconduct, we consider (1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the certainty of conviction absent the misconduct.  *Certified Envtl. Servs., Inc.*, 753 F.3d at 95.

The Government did not commit misconduct, let alone misconduct warranting the "drastic remedy" of reversing a criminal conviction.  *United States v. Valentine*, 820 F.2d 565, 570 (2d Cir. 1987).  There was a good faith basis for the assertion, as the Government explained the figure to the jury during summation:  (a) Hirst directed Gerova's transfer agent to issue over 5.3 million shares of Gerova to Shahini, (b) on the day the shares were sent to Shahini's account, Gerova shares were trading at

10

$13.56, and (c) as a result, the Shahini shares were worth $72 million the day they were issued.

Hirst's argument that this figure represents a misstatement that unfairly prejudiced the jury is an extension of his argument that the district court erred in admitting evidence of the disposition of the Shahini shares and in calculating loss under the Guidelines. For the same reasons discussed above, however, this was not a misstatement because the evidence at trial established that the object of the conspiracy and jointly undertaken activity was to overcome Regulation S restrictions and sell the Shahini shares on the U.S. market. Moreover, the Shahini shares were actually sold at market prices and the district court explicitly found at sentencing that the shares were worth $72 million when issued. For these reasons, and because the Government has "broad latitude in the inferences it may reasonably suggest to the jury," it did not commit misconduct by using the $72 million figure during summation. *See United States v. Zackson*, 12 F.3d 1178, 1183 (2d Cir. 1993).

\*　　　\*　　　\*

We have considered Hirst's remaining arguments and find them to be without merit. For the reasons set forth above, we **AFFIRM** the district court's judgment.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

11