*United States v. Gates*

# United States Court of Appeals
# For the Second Circuit

August Term 2022

Argued:  December 9, 2022
Decided:  October 17, 2023

No. 21-2134

UNITED STATES OF AMERICA,

*Appellee,*

*v.*

SARAH R. GATES,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of New York
No. 21-cr-65-1, Thomas J. McAvoy, *Judge.*

Before: CARNEY, SULLIVAN, *Circuit Judges*, and LIMAN, *District Judge*.[*]

     Sarah R. Gates challenges the procedural and substantive reasonableness of the forty-five-year sentence imposed by the district court (McAvoy, *J.*) following her guilty plea to one count of conspiracy to sexually exploit a child, in violation of 18 U.S.C. § 2251(a) and (e), and two substantive counts of sexual exploitation of a child, in violation of 18 U.S.C. § 2251(a). On appeal, Gates argues that the district court erred when it (1) predetermined her sentence at the outset of the sentencing proceeding, (2) failed to verify at sentencing whether she and her counsel had read and discussed the presentence investigation report, (3) miscalculated her offense level under the United States Sentencing Guidelines, and (4) imposed a substantively unreasonable term of imprisonment. We reject Gates's contentions that the district court predetermined her sentence and imposed a substantively unreasonable term of imprisonment. We also reject Gates's claim that the district court's purported miscalculation of her offense level under the Guidelines warrants remand in this case. With respect to Gates's remaining argument, we agree that the district court failed to verify whether she and her counsel had read and discussed the PSR in advance of sentencing, as is required by Federal Rule of Criminal Procedure 32(i)(1)(A). Nevertheless, while we cannot condone the district court's failure to comply with this basic requirement of Rule 32, we conclude that the error was not prejudicial. Accordingly, we **AFFIRM** the judgment of the district court.

     AFFIRMED.

> MATTHEW W. BRISSENDEN, Matthew W. Brissenden, P.C., Garden City, NY, *for Defendant-Appellant*.
>
> PAUL D. SILVER, Assistant United States Attorney, *for* Carla B. Freedman, United States Attorney for the Northern District of New York, Albany, NY, *for Appellee*.

---

[*] Judge Lewis J. Liman, of the United States District Court for the Southern District of New York, sitting by designation.

RICHARD J. SULLIVAN, *Circuit Judge*:

Sarah R. Gates challenges the procedural and substantive reasonableness of the forty-five-year sentence imposed by the district court (McAvoy, *J.*) following her guilty plea to one count of conspiracy to sexually exploit a child, in violation of 18 U.S.C. § 2251(a) and (e), and two substantive counts of sexual exploitation of a child, in violation of 18 U.S.C. § 2251(a).  On appeal, Gates argues that the district court erred when it (1) predetermined her sentence at the outset of the sentencing proceeding, (2) failed to verify at sentencing whether she and her counsel had read and discussed the presentence investigation report (the "PSR"), (3) miscalculated her offense level under the United States Sentencing Guidelines, and (4) imposed a substantively unreasonable term of imprisonment.  We reject Gates's contentions that the district court predetermined her sentence and imposed a substantively unreasonable term of imprisonment.  We also reject Gates's claim that the district court's purported miscalculation of her offense level under the Guidelines warrants remand in this case.  With respect to Gates's remaining argument, we agree that the district court failed to verify whether she and her counsel had read and discussed the PSR in advance of sentencing, as is required by Federal Rule of Criminal Procedure 32(i)(1)(A).  Nevertheless, while we cannot condone the

3

district court's failure to comply with this basic requirement of Rule 32, we conclude that the error was not prejudicial. Accordingly, we affirm the judgment of the district court.

## I. BACKGROUND

In April 2019, the New York State Police recovered sexually explicit images of Gates's daughter ("V-1") during a search of the residence and electronic devices of V-1's father, Christopher Perry, after receiving a tip that Perry had posted child pornography on Facebook. Certain of these images showed Perry and Gates sexually abusing V-1 – who was between two and five years old at the time. A forensic review of Perry's devices yielded at least seven images depicting the abuse of V-1, five of which gave rise to charges against Gates. These photographs indicated that Gates had sexually abused V-1 on at least two separate occasions: once when V-1 was wearing a "light[-]pink[-]colored tank top with a ruffled sleeve," and once when V-1 was wearing a "bright[-]pink tank top [printed] with the letters F-U-N." App'x at 29–30. Investigators also identified several explicit text message exchanges between Gates and Perry, in which the two described sexual fantasies involving V-1 as well as Gates's two older daughters and in which Gates represented that she herself would receive sexual gratification from the acts

4

described. When speaking with the police, Gates admitted that she and Perry had sexually abused V-1 approximately four times over the preceding year and a half.

In March 2021, Gates waived her right to an indictment and pleaded guilty – without a plea agreement – to three counts of an information: one count of conspiracy to sexually exploit a child, in violation of 18 U.S.C. § 2251(a) and (e) (Count One), and two counts of sexual exploitation of a child, in violation of 18 U.S.C. § 2251(a) (Counts Two and Three). Counts Two and Three alleged that, on two separate occasions (as reflected in the photographs recovered from Perry's devices), Gates used a minor victim "to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct." *Id.* at 13–14.

As set forth in Gates's PSR, the Probation Office calculated an adjusted offense level of fifty-one for Gates's conduct. The Probation Office arrived at this offense level by concluding, among other things, that none of the three counts should be grouped for Guidelines purposes and that certain enhancements should be applied because Gates used a cellphone to facilitate the sexual abuse of V-1, the photographs at issue portrayed sadistic content, and Gates qualified as a repeat and dangerous sex offender against minors. The Probation Office then concluded that the appropriate total offense level was forty-three, the maximum offense level

5

under the Guidelines.  *See* U.S.S.G. Ch. 5, Pt. A, cmt. n.2 ("An offense level of more than 43 is to be treated as an offense level of 43.").  Having determined that Gates fell into criminal history category I, the PSR noted that the Guidelines sentencing table provided for a life term of imprisonment.  But because each of the three counts of conviction carried a statutory maximum term of thirty years' imprisonment, the Guidelines sentence became ninety years.

The district court sentenced Gates on August 26, 2021, after adopting the factual information and Guidelines calculation set forth in the PSR without objection from defense counsel.  The district court imposed a term of imprisonment of 540 months (or forty-five years), to be followed by fifteen years' supervised release.  Gates timely appealed.

## II. DISCUSSION

As noted above, Gates raises a litany of challenges to the district court's sentence on both procedural and substantive grounds, which we address in turn.

### A.  Predetermination of Sentence

Gates first argues that the district court committed procedural error, asserting that the district court predetermined her sentence at the outset of the sentencing proceeding.  Specifically, Gates points to the district court's statement

6

at the beginning of the proceeding that it would deliver "a result that the [c]ourt feels is necessary," App'x at 68, and its statement in the middle of the proceeding that it had "arrive[d] at a sentence that [it] fe[lt] [wa]s appropriate and that [it] ha[d] to give her," *id.* at 73, as demonstrating that the district court determined the sentence it intended to impose before hearing from defense counsel or Gates herself. We disagree.

Rule 32 of the Federal Rules of Criminal Procedure provides that the district court must "provide the defendant's attorney an opportunity to speak on the defendant's behalf" and "permit the defendant to speak or present any information to mitigate the sentence" before imposing sentence. Fed. R. Crim. P. 32(i)(4)(A)(i)–(ii). We have interpreted this rule to require that a defendant and her counsel be permitted to "speak[] to a judge when the slate is clean" rather than "after sentencing in an effort to have the judge change his mind." *United States v. Gonzales*, 529 F.3d 94, 98 (2d Cir. 2008); *see also United States v. Li*, 115 F.3d 125, 133 (2d Cir. 1997). In other words, to satisfy Rule 32(i)(4)(A), a sentencing court must provide defense counsel the "opportunity to argue on the defendant's behalf," must afford the defendant "a prompt opportunity for an allocution," and must give "the defendant's statements full consideration." *United States v. Gutierrez*, 555

F.3d 105, 111 (2d Cir. 2009) (internal quotation marks omitted). This rule does not

– and could not – mean that the district court must refrain from formulating

thoughts about the appropriate sentence until after the defendant and her lawyer

have addressed the court. It simply means that a judge must hear from the

defendant and her counsel before reaching a final decision and imposing sentence,

which is certainly what happened here.

The record reflects that Gates was "allowed a meaningful right to express

relevant mitigating information before an attentive and receptive district judge."

*Li*, 115 F.3d at 133. Before sentencing, Gates provided the district court with a

sentencing memorandum from counsel and mitigation letters from Perry, Gates's

mother, and Gates herself. At sentencing, the district court heard extensive

argument from Gates's counsel and provided Gates with an opportunity to

address the court, which she declined. Although Gates suggests that the district

court had decided what sentence to impose before hearing from defense counsel

or giving Gates an opportunity to be heard, the record reflects that the district

court arrived at a sentence that it felt was adequate only after "review[ing] and

consider[ing] all the pertinent evidence." App'x at 78. On this record, we cannot

8

conclude that the district court predetermined a sentence before Gates had a meaningful opportunity to provide mitigating information.

### B. Miscalculation of the Offense Level Under the Sentencing Guidelines

Gates also argues that the district court miscalculated her offense level under the Sentencing Guidelines when it engaged in an improper grouping analysis under section 3D1.2, and wrongly applied enhancements for possession of sadistic images, use of a cellphone to solicit participation in sexually explicit conduct with a minor, and engagement in a pattern of prohibited sexual conduct. Because Gates did not object in the district court to any of these asserted miscalculations, plain-error review applies. *See United States v. McCrimon*, 788 F.3d 75, 78 (2d Cir. 2015). Under the plain-error standard, "an appellate court can correct an error not raised in the district court" only if the error "is plain," "affects substantial rights," and "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Dussard*, 967 F.3d 149, 155 (2d Cir. 2020) (internal quotation marks and alterations omitted). "An error affects the defendant's substantial rights when it is prejudicial – that is, when there is a reasonable probability that the error affected the outcome of the proceeding." *Id.* at 156 (internal quotation marks omitted). Under this standard, "the burden of

9

establishing entitlement to relief for plain error is on the defendant claiming it."

*United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004).

We begin with Gates's argument that the district court improperly treated Count One – the conspiracy count – as a separate, third "group[]" under section 3D1.2 of the Sentencing Guidelines, resulting in a higher-than-appropriate offense level.  Gates's Br. at 23–24.  Section 3D1.2 provides that "[a]ll counts involving substantially the same harm shall be grouped together into a single [g]roup."  U.S.S.G. § 3D1.2.  And while "[s]ection 3D1.2(d) specifically prohibits counts charging *production* of child pornography to be grouped together," *United States v. Brown*, 843 F.3d 74, 82 (2d Cir. 2016) (emphasis added), section 3D1.2(b) makes clear that "counts involv[ing] the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan" should be grouped together in a single group, U.S.S.G. § 3D1.2(b).  Any doubt on this issue is resolved by comment 4 to section 3D1.2, which explains that "[w]hen one count charges a conspiracy or solicitation and the other charges a substantive offense that was the sole object of the conspiracy or solicitation, the counts will be grouped together under [section 3D1.2](b)."  *Id.* § 3D1.2 cmt. n.4; *see also id.* § 3D1.2 cmt. n.8 (noting that where a defendant is

convicted of conspiring to commit multiple substantive offenses, the court should "treat the conspiracy count as if it were several counts" and then "apply the ordinary grouping rules").

Here, it is undisputed that the conspiracy count involved the same victim, acts, and criminal objective as the two underlying substantive counts. *See* App'x at 13–15 (the information). As such, we find that the district court erred by treating the conspiracy count as a separate group from the two substantive counts under section 3D1.2. Nevertheless, had the district court not assigned the conspiracy count to a separate group, Gates's offense level would have been reduced from fifty-one to fifty. Because the highest offense level available under the Sentencing Guidelines is forty-three, the district court's grouping error could have had no impact on Gates's total offense level unless the district court made additional errors that combined to result in an eight-level enhancement. *See Brown*, 843 F.3d at 82 (concluding that alleged misapplication of Guidelines "would necessarily be harmless" where defendant's total offense level would still have exceeded the maximum offense level even absent the alleged error); *United States v. Broxmeyer*, 699 F.3d 265, 288 (2d Cir. 2012) (same).

11

We therefore turn to Gates's arguments regarding the challenged enhancements, and specifically Gates's argument that the district court erroneously applied the enhancement under section 4B1.5 of the Sentencing Guidelines for engaging "in a pattern of activity involving prohibited sexual conduct." U.S.S.G. § 4B1.5(b). To uphold a district court's finding of a "pattern" under section 4B1.5, "we need identify only two such occasions" of prohibited sexual conduct. *Broxmeyer*, 699 F.3d at 284 (citing U.S.S.G. § 4B1.5(b)(1) & cmt. n.4(B)(i)). In arguing that the enhancement does not apply, Gates relies heavily on *Broxmeyer*, in which we held that one of the two predicate occasions of sexual misconduct for purposes of section 4B1.5(b) can be the crime of conviction itself. *See id.* at 285–86. Gates reads *Broxmeyer* to stand for the proposition that under section 4B1.5(b), *only one* instance of prohibited sexual conduct may stem from the crime of conviction. We disagree.

In interpreting section 4B1.5(b), we have explained that "we accord Guidelines language its plain meaning: 'two' means two, not three; and 'separate' means the two occasions must be separate from each other, not that the two occasions demonstrating a pattern must be separate from (and in addition to) the crime of conviction." *Id.* at 285. Here, Gates allocuted to two separate prohibited

12

acts that formed the bases of the section 4B1.5 enhancement. The record reflects that two of the predicate images depicted V-1 "wearing a light[-]pink[-]colored tank top," App'x at 29, and three other predicate images depicted V-1 "wearing a bright[-]pink tank top [printed] with the letters F-U-N," *id.* at 29–30. On this record, we agree with the district court's application of the section 4B1.5 enhancement, since its finding of a "pattern" was supported by "two separate" instances of prohibited sexual misconduct. U.S.S.G. § 4B1.5 cmt. n.4(B)(i).

Gates's remaining arguments – that the district court plainly erred in assessing enhancements under the Guidelines for possession of sadistic images and use of a cellphone to solicit participation in sexually explicit conduct with a minor – likewise fail, since any error in applying these enhancements would have had no impact on Gates's total offense level or the applicable sentencing range. The enhancements for sadistic images and use of a cellphone together accounted for a six-level increase in Gates's adjusted offense level. Even assuming that these enhancements were erroneously applied, and accounting for a one-level decrease as a result of the district court's grouping error, Gates's adjusted offense level would still be forty-four – one level *above* the cap imposed by the Guidelines. As such, we conclude that these purported errors cannot support remand in this case.

*See, e.g., Brown*, 843 F.3d at 82 (finding alleged misapplication of enhancement for images portraying sadistic conduct to be harmless where defendant's "total offense level exceeded the highest offense level listed in the sentencing table by more than four levels, [resulting in a] Guidelines range [that] would have been identical even absent this [challenged] enhancement"); *United States v. Cramer*, 777 F.3d 597, 603 (2d Cir. 2015) ("An error in Guidelines calculation is harmless if correcting the error would result in no change to the Guidelines offense level and sentencing range."); *Broxmeyer*, 699 F.3d at 288 (determining that alleged grouping error was harmless because the resulting one-level enhancement to defendant's offense level would not have made any difference to the district court's calculation of his sentencing range).

### C. Substantive Unreasonableness of the Term of Imprisonment

Gates further argues that the forty-five-year sentence imposed by the district court was substantively unreasonable. We review the substantive reasonableness of a district court's sentence under a "deferential abuse-of-discretion standard." *United States v. Portillo*, 981 F.3d 181, 184 (2d Cir. 2020) (internal quotation marks omitted). In doing so, we must "take into account the totality of the circumstances, giving due deference to the sentencing judge's exercise of discretion, and bearing in mind the institutional advantages of district courts." *United States v. Ramos*, 979

14

F.3d 994, 998 (2d Cir. 2020) (internal quotation marks omitted). "[W]e will set aside only those sentences that are so shockingly high, shockingly low, or otherwise unsupportable as a matter of law that allowing them to stand would damage the administration of justice." *United States v. Muzio*, 966 F.3d 61, 64 (2d Cir. 2020) (internal quotation marks omitted).

Considered in the context of offenses involving sexual misconduct against minors, Gates's forty-five-year custodial sentence is not "shockingly high, shockingly low, or otherwise unsupportable as a matter of law." *Id.* (internal quotation marks omitted). The district court found that Gates's total offense level was forty-three and her criminal history category was I. As a result, the Guidelines imprisonment range would have been life, but was capped at ninety years because each of the counts of conviction carried a maximum term of imprisonment of thirty years. The district court ultimately imposed a below-Guidelines sentence of forty-five years' imprisonment, which it found to be "sufficient but not greater than necessary to comply with the purpose[s] of sentencing." App'x at 79. "In the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *United States v. Bryant*, 976 F.3d 165, 181 (2d Cir. 2020) (internal

15

quotation marks and alterations omitted).  As a result, "[i]t is . . . difficult to find

that a below-Guidelines sentence is unreasonable." *United States v. Perez-Frias*, 636

F.3d 39, 43 (2d Cir. 2011).  Here, the forty-five-year sentence imposed by the district

court is well within the "broad range" of sentences that have been upheld as

reasonable on similar facts. *See, e.g.*, *United States v. Pattee*, 820 F.3d 496, 512–13 (2d

Cir. 2016) (rejecting substantive reasonableness challenge to forty-seven-year

sentence when defendant's offense "included the active use of a minor to engage

in sexual activities for the purpose of producing child pornography"); *United States

v. Brown*, 613 F. App'x 58, 60 (2d Cir. 2015) (upholding sixty-year sentence where

defendant "recruited [another person] to sexually exploit minors who were

accessible to her, directed her to take pornographic photographs and videos of

them, and provided instructions to her about the exact nature of the images and

videos that he wanted").[1]

---

[1] Gates complains that the district court's decision to impose the same sentence on her as it did on Perry was substantively unreasonable, particularly because Perry had a criminal history and possessed thousands of images of child pornography on his computer when he was arrested.  But we have stated that the "weight to be given sentencing disparities, like the weight to be given any § 3553(a) factor, is a matter firmly committed to the discretion of the sentencing judge" and we will only set aside "those outlier sentences that reflect actual abuse of a district court's considerable sentencing discretion." *United States v. Messina*, 806 F.3d 55, 66–67 (2d Cir. 2015) (internal quotation marks and alterations omitted); *see also United States v. Frias*, 521 F.3d 229, 236 (2d Cir. 2008) (explaining that, although "section 3553(a)(6) requires a district court to consider nationwide sentence disparities, [it] does not require a district court to consider disparities between co-defendants").

Based on the record before us, we cannot say that the district court imposed a substantively unreasonable sentence.

**D. Failure To Verify Whether Gates and Her Counsel Read and Discussed the PSR**

Gates also contends that the district court erred by failing to verify at sentencing whether she had read and discussed the PSR with her counsel. Rule 32(i)(1)(A) provides that the district court "*must verify* that the defendant and the defendant's attorney *have read and discussed* the [PSR] and any addendum to the report."  Fed. R. Crim. P. 32(i)(1)(A) (emphasis added).  While conceding that "the district court did not, as it should have, inquire whether Gates and her counsel read and discussed the PSR," Gov't's Br. at 34, the government relies on *United States v. Cortez* to argue that, in the absence of direct inquiry, the district court may still satisfy Rule 32(i)(1)(A) by "draw[ing] reasonable inferences about whether the defendant . . . had . . . review[ed] . . . and . . . discuss[ed] [the PSR] with counsel," 841 F.2d 456, 460–61 (2d Cir. 1988).  The government contends that, in this case, the district court reasonably inferred from the various references to the PSR in Gates's mitigation letter and her counsel's sentencing memorandum that Gates and her counsel had read and discussed the PSR.

17

But the government's reliance on *Cortez* is misplaced given that Rule 32(i)(1)(A) has been significantly amended since we issued that decision. When *Cortez* was decided, the Rule provided that "before imposing sentence[,] the district court *shall . . . determine* that the defendant and the defendant's counsel have *had the opportunity* to read and discuss the [PSR]." *Id.* at 460 (emphasis added and alterations omitted). But in 1994, Rule 32(i)(1)(A) was amended to state that "[a]t sentencing, the [district] court . . . *must verify* that the defendant and the defendant's attorney *have read and discussed* the [PSR] and any addendum to the report." Fed. R. Crim. P. 32(i)(1)(A) (emphasis added).

We take this occasion to emphasize the importance of the requirement that a district court verify that a defendant and her counsel have both read and discussed the PSR. Indeed, the Rule reflects the vital role the PSR plays in sentencing. *See United States v. Palta*, 880 F.2d 636, 640 (2d Cir. 1989) ("[A]n accurate presentence report is crucial both to ensure the fairness of an individual defendant's sentence and to enhance the overall goal of uniformity in sentencing."). We therefore decline the government's invitation to overlook the intervening amendments to Rule 32(i)(1)(A) and to excuse the district court from its affirmative obligation to verify that the defendant and her counsel read and

18

discussed the PSR.  *See United States v. Ortiz-Garcia*, 665 F.3d 279, 287 (1st Cir. 2011) (concluding that "Rule 32(i)(1)(A)'s mandate was not satisfied" notwithstanding the court's interpretation of "a prior iteration of the Rule").

Here, at no time during the sentencing hearing did the district court inquire, let alone "*verify*," whether Gates and her counsel had read *and* discussed the PSR. Fed. R. Crim. P. 32(i)(1)(A) (emphasis added).  To the contrary, the district court made no inquiry of Gates or her counsel, even when the government expressly asked the district court during the sentencing hearing "to confirm that the defendant had an opportunity to . . . review the PSR and the addenda and that there was no objection . . . as to the PSR or the [G]uidelines calculation in there." App'x at 72–73.  Rather than follow the clear dictates of Rule 32, the district court ignored the government's respectful suggestion that the court inquire as to whether Gates and her counsel had read and discussed the PSR, instead stating that such an inquiry was unnecessary because "[t]here[] [was] no objection from the defendant as to how the PSR was composed [and] how [the Guidelines were] calculated."  *Id.* at 73.  We therefore conclude that the district court committed a significant error in violating the express requirements of the Rule.

Nevertheless, in the absence of a contemporaneous objection, we review a Rule 32(i)(1)(A) violation under the plain-error standard "to correct only particularly egregious errors when a miscarriage of justice would otherwise result." *United States v. Algahaim*, 842 F.3d 796, 799–800 (2d Cir. 2016) (internal quotation marks omitted). Here, Gates has not established how the district court's error "affect[ed] [her] substantial rights." *Dussard*, 967 F.3d at 155 (internal quotation marks omitted). For starters, Gates does not argue that she and her counsel never read and discussed the PSR. Moreover, the record reflects that Gates's counsel and Gates herself read the PSR: Gates's counsel referenced the PSR in his sentencing memorandum, *see, e.g.*, App'x at 50–51, while Gates herself referenced reading the PSR in her mitigation letter, *see, e.g.*, *id.* at 62 ("When I read the PS[R] and saw that he had hurt one of my other children, I felt like my heart and soul were ripped out again."). Most importantly, Gates does not identify any prejudice that she suffered as a result of the district court's failure. Gates does not dispute the accuracy of any facts in the PSR that were relevant to the district court's sentencing determination and none of the errors asserted by Gates on appeal – concerning purported miscalculations of her offense level under the Sentencing Guidelines – would have altered her total offense level or the applicable

sentencing range. As a result, we find that Gates has not demonstrated prejudice as is required to prevail on plain-error review.

Accordingly, Gates has failed to establish "a 'reasonable probability' that the [Rule 32] error affected the outcome of the proceeding," *Dussard*, 967 F.3d at 156, which is fatal to her argument. Still, it bears noting that the district court's failure to comply with the basic dictates of Rule 32 in this instance – despite being specifically reminded of its obligation to do so – was inexcusable. We therefore conclude by stressing that district courts must be scrupulous in adhering to the requirements of Rule 32 when embarking on the important function of imposing sentences in criminal cases.

### III. CONCLUSION

For these reasons, we **AFFIRM** the judgment of the district court.

21